234 So.2d 862 (1970)
Anthony VOISIN et al.
v.
Whitney LUKE et al.
No. 7928.
Court of Appeal of Louisiana, First Circuit.
April 13, 1970.
Rehearing Denied May 25, 1970.
Gerald F. Lofaso, Houma, for appellants.
Cleveland J. Marcel, Jr., Houma, and Daniel C. Wiemann, New Orleans, for appellees.
Before LOTTINGER, BLANCHE and PICKETT, JJ.
LOTTINGER, Judge.
This is a possessory action in which the plaintiffs, Anthony Voisin, et al., (hereinafter sometimes referred to as Voisins) alleged that they were disturbed in their possession of certain property situated in the Parish of Terrebonne, Louisiana, and that the defendants, Whitney Luke, et al, (hereinafter sometimes referred to as the Lukes) slandered plaintiffs' title by the execution of an oil, gas and mineral lease covering the subject property. The Trial Court found in favor of defendants, and from this judgment the plaintiffs have appealed.
The plaintiffs-appellants filed this possessory action on January 2, 1962, alleging *863 that the defendants-appellees have slandered plaintiffs' title by executing an oil, gas and mineral lease to Texas Liberty Gas Corporation on December 1, 1961, and having recorded in the conveyance records of the Parish of Terrebonne on December 19, 1961, said lease covering the following described property, to-wit:
"A certain tract of land situated in Section 37, T 20 S, R 17 E, measuring one arpent in width, bounded on the east by Whitney Luke, et al., on the west by the western boundary line of Section 37, T 20 S, R 17 E, on the south by the southern boundary line of Section 37, T 20 S, R 17 E, and on the north by Lawrence Voisin, et al.
"It is recognized by the parties that by instrument dated April 6, 1960, recorded in the records of Terrebonne Parish in COB 295, folio 585, lessors granted an oil, gas and mineral lease to Corbe L. Dupre covering a tract of land one arpent in width extending a distance of 15 arpents westward from Bayou Grand Caillou.
"It is the intention of the lessors herein that this lease cover all property of lessor in Section 37, T 20 S, R 17 E, lying to the rear of and adjoining the property covered by said lease."
Plaintiffs-appellants prayed that they be recognized as possessing as owners the above described property; for damages occasioned by the slander of their title by the defendants-appellees; and reserving their rights to sue for additional damages. The defendants filed a general denial answer and prayed that they be granted "a decree recognizing your defendants' possession as owners and denying plaintiffs' demand at their cost".
This proceeding has been before this Court and the Louisiana Supreme Court on several occasions relative to different points prior to the trial on the merits, and it would serve no useful purpose at this time to rediscuss the history of this matter.
The plaintiffs-appellants have assigned the following specifications of error on the part of the Trial Court:
(1) The Trial Court erred in failing to find that the defendants had converted this possessory action into a petitory action by their very pleadings;
(2) The Trial Court erred in failing to find possession of the plaintiffs at the time of the disturbance;
(3) The Trial Court erred in recognizing and maintaining defendants' possession as owners of said property.

CONVERSION OF POSSESSORY INTO PETITORY ACTION
The particular point at issue here is controlled and governed by LSA-C.C.P. Art. 3657, which provides:
"The plaintiff may not cumulate the petitory and the possessory actions in the same suit or plead them in the alternative, and when he does so he waives the possessory action. If the plaintiff brings the possessory action, and without dismissing it and prior to judgment therein institutes the petitory action, the possessory action is abated.
"When, except as provided in Article 3661(1)-(3), the defendant in a possessory action asserts title in himself, in the alternative or otherwise, he thereby converts the suit into a petitory action, and judicially confesses the possession of the plaintiff in the possessory action.
"If, before executory judgment in a possessory action, the defendant therein institutes a petitory action in a separate suit against the plaintiff in the possessory action, the plaintiff in the petitory action judicially confesses the possession of the defendant therein."
Further, LSA-C.C.P. Art. 3661 provides:
"In the possessory action, the ownership or title of the parties to the immovable property or real right is not at issue.

*864 "No evidence of ownership or title to the immovable property or real right shall be admitted except to prove:

(1) The possession thereof by a party as owner;

(2) The extent of the possession thereof by a party; or
(3) The length of time in which a party and his ancestors in title have had possession thereof." (Emphasis added.)
The plaintiffs-appellants contend that when the defendant prayed for a decree recognizing their "possession as owners" of the subject property, they converted the possessory action into a petitory action and judicially confessed the possession of the plaintiff in the possessory action.
The defendants-appellees contend that the phrase "possession as owner" does not mean "possessor-owner", it being their contention that the phrase "possession as owner" means that one who claims to possess a certain tract of land must possess it for himself as opposed to possessing it for someone else, i. e. through a lease.
LSA-C.C.P. Art. 3656 provides in part that:
"A plaintiff in a possessory action shall be one who possesses for himself."
Article 47 of the Code of Practice, one of the source articles for Article 3656, provides that:
"The possessors entitled to bring these actions are those who possess as owners."
The comments under LSA-C.C.P. Art. 3656 indicate that the drafters of the Code of Civil Procedure did not intend to change the meaning of, but only clarify Article 47 of the Code of Practice. There is no question but that the possessory action does not determine ownership, and when Article 47 of the Code of Practice stated that one who was entitled to bring these actions are those who possess as owners, it was not interjecting the question of title, but speaking merely of possession. The plaintiff-appellant has cited to this Court the case of Haas Land Company v. O'Quin, 187 So.2d 208 (La.App.3rd Cir., 1966) for the proposition that the prayer of the defendants-appellees' answer is controlling, and inasmuch as the defendants-appellees prayed to be recognized in "possession as owners" the proceeding was converted into the petitory action and the possession of the plaintiff was judicially confessed. On studying the opinion in Haas Land Company v. O'Quin, supra, we do not reach the same conclusion as the plaintiffs-appellants. Though it would seem at first blush that the Court relied on the prayer, a thorough study will disclose that the entire answer of the defendant in a possessory action must be taken into consideration. Therefore, we do not find any error on the part of the Trial Judge as to this specification.

POSSESSION OF THE PLAINTIFFS AT THE TIME OF THE DISTURBANCE
LSA-C.C.P. Art. 3658 provides:
"To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance."
The Trial Court rendered well written reasons for judgment, and we therefore adopt same in answer to the above specification of error.
*865 "The property at issue is located in Terrebonne Parish in Section 37, T20S, R17E and comprises part of what was known as the Cossier grant. More specifically the land in controversy is part of a tract described as one arpent in width fronting on the right descending bank of Bayou Grand Caillou and extending westerly to depth of survey. (assumed by all to be 40 arpents) Plaintiffs admit (Pl.Br. p. 2) that defendants are the owners and possessors of the property extending from Bayou Grand Caillou to a point six arpents west of Bayou Grand Caillou; and that the one arpent wide strip between that point six arpents west of the bayou and a point fifteen arpents west of the bayou, though claimed by plaintiffs, is not involved in this controversy. We are concerned then only with the possession of the one arpent strip beginning fifteen arpents west of Bayou Grand Caillou and extending westward the full depth of survey, that is, to the western boundary line of Section 37, T20S, R17E. This is in essence the description by the property leased by defendants in the lease of December 1, 1961, which constituted the slander complained of by plaintiffs.
"We feel that no discussion is necessary to establish that the execution by defendants of the lease of December 1, 1961 constituted the type of disturbance contemplated by law as requisite to a possessory action.
"It must be determined factually whether plaintiffs had possession of the disputed property for more than a year prior to the disturbance and whether this suit was brought within the year in which the disturbance occurred. This court by its ruling on defendants' exceptions of no cause and no right of action has already ruled in effect that the suit was brought within the year in which the disturbance occurred.
"To put the testimony as to possession of the land in proper prospective, it should be pointed out that the land in dispute is a westward extension of and is located directly behind property presently occupied by defendants. It also adjoins other land of plaintiffs lying immediately to the north.
"Both plaintiffs and defendants offered testimony to show their respective exclusive exercise of possession over the one arpent wide strip in question by regular trapping operations, sporadic hunting, and the occasional burning of parts of the area. Defendants' witnesses also testified to the existence of `no trespassing' signs erected by the defendants on the land in question.
"Testimony was also introduced regarding the one time existence of certain fences. In our opinion, that testimony is in utter confusion and, even if pertinent, it is not possible to ascertain whether the fences existed along the boundaries of the one arpent tract in dispute, across the tract, or on other portions of plaintiffs' land to the north of the disputed strip. Some of the evidence indicates the fence or fences may have originally separated other tracts in the same section as much as two arpents north of the property in dispute, and that those who claimed to have trapped or hunted with permission of the Voisins did not go beyond the fences to trap or hunt to the south, on the land here in dispute.
"Without making reference to the testimony of any specific witnesses, the testimony as a whole reflects that both the Voisins and the Lukes (or their respective permittees) trapped in the vicinity of the land in question sporadically during the same trapping seasons. But, for all purposes pertinent hereto, the Voisins never saw the Lukes on the land and the Lukes never saw the Voisins on the land.
"The testimony leaves much to be desired, but it is our conclusion that the testimony of the Voisin witnesses taken on a whole indicated only that they trapped and hunted on what they considered Voisin property, but not specifically on the strip extending behind the Luke frontage. The testimony of the Lukes' witnesses, on the other hand, indicated that the Lukes' trapping and hunting activities were confined to the land *866 behind the Lukes' house, which strip is the land here involved.
"Had we not reached that opinion for those reasons however, we believe that the law as announced in Daull v. Smith, La. App., 51 So.2d 138, quoting Gilmore v. Schenck, 115 La. 386, 39 So. 40, would have brought us to the same conclusion.
"The Daull case was a possessory action wherein the tract of land involved was included in the titles held by both plaintiff and defendant, both of whom claimed possession. The Court of Appeal (J. H. Dore, Judge) `admitting, for the mere sake of argument that neither the plaintiffs nor the defendant had had the real and actual possession of the disputed property for more than one year prior to the disturbance * * *' quoted from the Gilmore case as follows:
`"It is manifestly impossible that there should be two constructive possessions at one and the same time of the same property. The person first holding constructive possession of a particular property under a title maintains it as against later alleged constructive possession of the same property by another person. The possession of the latter is limited to the precise property of which he has actual possession." Gilmore v. Schenck, 115 La. 386, 39 So. 40, 44'
"As we have stated above, the Supreme Court of Louisiana has taken cognizance of the date of defendants' alleged title as 1925. Plaintiffs, on the other hand, assert for the purposes of this suit a title dated Nov. 19, 1934 (See Pl.Br. p. 18), and filed in evidence the entire record in Lawrence Voisin v. Harry Bourg, No. 10620, 17th Judicial District Court, Parish of Terrebonne, wherein judgment was rendered on Nov. 5, 1934 and ostensibly resulted in the above sale to plaintiffs' ancestor in title.
"Applying the law as above announced to the facts in this case, it would seem that the Lukes have made out the better case of possession.
"We feel that any other discussion of the titles, boundary agreements and litigation filed in the record by plaintiffs would not be appropriate to this possessory action, more particularly since there is no showing that defendants were in any way privy to or bound by them."
Plaintiffs-appellants' third specification of error, "That the Trial Court erred in recognizing and maintaining defendants' possession as owners of said property," is fully answered by the discussion pertaining to specification of error Number 2.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is affirmed, all costs are to be paid by plaintiffs-appellants.
Judgment affirmed.